ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL IX

| | | |
|---|---|---|
| WID, LLC ET AL<br><br>QUERELLANTES RECURRENTE<br><br>V.<br><br>DEPARTAMENTO DE LA VIVIENDA DE PUERTO RICO<br><br>QUERELLADOS RECURRIDO | TA2026RA00153 | *REVISIÓN DE DECISIÓN ADMINISTRATIVA* procedente de la Junta Revisora de Subastas de la Administración de Servicios Generales<br><br>Caso Núm.: JR-25-126<br><br>Sobre: "Single – Family Housing Development Initiatives-II" |

Panel integrado por su presidenta, la juez Brignoni Mártir, el juez Salgado Schwarz y la juez Aldebol Mora

**Brignoni Mártir, Juez Ponente**

### SENTENCIA

En San Juan, Puerto Rico, a 12 de mayo de 2026.

Comparece ante nos, Uni-Gold Development Corp. ("UGD"), Lumar Development Corp. ("Lumar"), N and H.A.M. Inc. ("N and H.A.M.") y Rean Development Corp. ("Rean"), en adelante, en conjunto, ("las recurrentes"). Solicitan nuestra intervención para que dejemos sin efecto la *"Resolución"* emitida y notificada el 9 de marzo de 2026, por la Junta Revisora de Subastas de la Administración de Servicios Generales (en lo sucesivo, "Junta Revisora de la ASG").

Por los fundamentos que expondremos a continuación, *confirmamos* la *"Resolución"* recurrida.

### I.

El caso objeto de revisión tiene su origen en el Requerimiento de Propuestas identificado como CDBG-DRMIT-RFP-2023-08 ("RFP-2023-08") publicado, el 29 de septiembre de 2023, por el Departamento de la Vivienda (en lo sucesivo, "DVPR"). Este proceso de solicitud de propuestas se promovió con el fin de seleccionar una serie de compañías que

proporcionaran servicios de desarrollo para la construcción de viviendas unifamiliares.

Así las cosas, el 30 de septiembre de 2024, la Junta de Subastas del DVPR adjudicó el RFP-2023-08. Los siguientes licitadores obtuvieron la buena pro: Océano Development, LLC; Jennymar Corporation; JMC DEV, LLC; HH Rodríguez, LLC; Marcelo Electro (Hacienda Somar); Desarrollo de la Vega, Inc.; Paradise 70, LLC; NFD Construction, LLC; Alturas del Llano, LLC; CC Comercial Development, LLC; Toscana Sur CDBG-MIT, LLC; Sagrado Corazón Housing JV, LLC.

Notificada la Resolución de la Junta de Subastas del DVR, el 21 de octubre de 2024, las recurrentes comparecieron ante el Tribunal de Apelaciones. Mediante un recurso de revisión judicial, plantearon que la Junta de Subasta del DVPR[1] incidió al descalificarlas del proceso de solicitud de propuestas bajo el supuesto de que no cumplieron con el requerimiento de capacidad financiera para sufragar los proyectos.

En esa ocasión también comparecieron al Tribunal de Apelaciones los licitadores Finca Adela, LLC y WID, LLC. Este último impugnó el Aviso de Adjudicación emitido por la Junta de Subastas del DVPR. Sostuvo, que el referido Aviso resultó inoficioso puesto que no cumplió con los requisitos de notificación exigidos por la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, Ley Núm. 38-2017, según enmendada, 3 LPRA sec. 9601 et seq. Presentados los argumentos de las partes, el 26 de noviembre de 2024, un panel hermano de este Tribunal resolvió de manera conjunta los recursos de designación alfanumérica: KLRA202400590; KLRA202400594; y KLRA202400595. El Foro Apelativo concluyó lo siguiente:

> [L]a presentación del recurso de revisión administrativa ante la Junta Revisora de Subastas de la Administración de Servicios Generales es un requisito jurisdiccional antes de presentar un recurso de revisión judicial ante este Tribunal de Apelaciones […] por lo que carecemos de jurisdicción para atender los recursos de revisión de judicial de epígrafe por prematuro [sic].

---

[1] Véase, Entrada Núm. 4 de SUMAC del TA, anejo intitulado "Recurso de Revisión Judicial KLRA202500590."

A tenor de lo anterior desestimó los recursos presentados. En consecuencia, ordenó a la Junta de Subasta del DVPR a notificar conforme a derecho a todas las partes para que el término correspondiente comenzara a decursar y las partes adversamente afectadas pudieran recurrir ante la Junta Revisora de Subastas de la ASG.

El 4 de marzo de 2025, el Tribunal de Apelaciones notificó el Mandato correspondiente. Posteriormente, el 11 de abril de 2025, la Junta de Subastas del DVPR emitió una nueva Notificación de Adjudicación.[2] Así pues, el 21 de abril de 2025, las recurrentes presentaron de forma conjunta un recurso de revisión administrativa ante la Junta Revisora de Subastas de la ASG.

No obstante, el 1 de mayo de 2025, como cuestión principal, la aludida Junta Revisora notificó mediante *"Resolución"* que no tenía jurisdicción sobre la materia para atender el asunto ante sí.[3] En síntesis, aludió a la "Determinación Administrativa 2021-01" y razonó que al llevarse a cabo el RFP-2023-08 en virtud de subvenciones federales, los acuerdos perfeccionados con el Gobierno Federal prevalecen sobre las disposiciones estales. En consecuencia, concluyó que el RFP-2023-08 está excluido de la Ley de la Administración de Servicios Generales para la Centralización de las Compras del Gobierno de Puerto Rico de 2019, Ley Núm. 73-2019, según enmendada, 3 LPRA sec. 9831 et seq. En virtud de lo anterior, se declaró sin autoridad para revisar en sus méritos el RFP-2023-08 y devolvió el caso al DVPR para la continuación de procedimientos ulteriores.

---

[2] Surge del Expediente ante nos, que la notificación del 11 de abril de 2025 fue el tercer Aviso de Adjudicación remitido a los proponentes. El 26 de febrero de 2025, antes de la notificación del Mandato del Tribunal de Apelaciones, la Junta de Subastas del DVPR notificó un segundo *"Notice Award."* Sin embargo, tras algunos licitadores recurrir a la Junta Revisora de Subastas de la ASG, dicha Junta se abstuvo de revisar los méritos del RFP-2023-08 bajo el razonamiento de que el segundo Aviso adjudicativo fue notificado a destiempo. En aquella ocasión, la Junta Revisora fundamentó su desestimación en que dicho Aviso se remitió antes de la notificación del Mandato del Foro Apelativo, por lo cual carecía de jurisdicción para revisar sus méritos. Véase, la Entrada Núm. 4 de SUMAC del Tribunal de Apelaciones, anejo intitulado *"Notice of Award Segundo Aviso."* Véase, además, la Entrada Núm. 4 de SUMAC del Tribunal de Apelaciones, anejo intitulado *"Resolución de Junta de Revisión de Subastas."*

[3] Véase, la Entrada Núm. 4 de SUMAC del TA, anejo intitulado *"Resolución de Junta de Revisión de Subastas"* (TA 1145 – TA 1152).

Así pues, tanto las recurrentes como el DVPR comparecieron ante el Tribunal de Apelaciones para impugnar la decisión emitida por la Junta de Subastas de la ASG. Así las cosas, este Foro Apelativo acogió los recursos presentados y los consolidó. Acto seguido, el 17 de junio de 2025, un panel hermano emitió *"Sentencia"* para el caso KLRA202500290 consolidado con el caso KLRA202500291. Este Panel Hermano, determinó que "es forzoso concluir que la Junta Revisora de la ASG debe atender el asunto ante su consideración. Solo así podremos atender el recurso de revisión judicial de epígrafe." Ante ello, revocó entonces la *"Resolución"* recurrida y ordenó a la Junta Revisora de Subastas de la ASG que "atienda el recurso ante su consideración y resuelva el mismo."[4]

Tras varios trámites procesales que no son necesarios de pormenorizar, el 9 de marzo de 2026, la Junta Revisora de Subastas de la ASG notificó la *"Resolución"* que hoy nos ocupa. Mediante esta, declaró *No Ha Lugar* la solicitud de revisión administrativa presentada por las recurrentes. Consecuentemente, confirmó la Adjudicación del RFP-2023-08 emitida por la Junta de Subastas del DVPR. Razonó, que las recurrentes incumplieron con algunos de los requisitos financieros exigidos por la Sección 6.1.2 del RFP-2023-08. Especificó, que UGD omitió someter una carta de intención de alguna institución financiera en la que se demostrara la disposición de la institución de ofrecerle financiamiento por la cantidad de $7.5 millones. Agregó, que a pesar de que el resto de las recurrentes presentaron cartas de intención de financiamiento, las misivas no especifican la cuantía por la cual la institución financiera estaría dispuesta a proveerles financiamiento.

A su vez, determinó que tampoco las recurrentes acreditaron contar con el efectivo suficiente o con una línea de crédito que alcanzara la cuantía

---

[4] Cabe mencionar, que el 15 de septiembre de 2025, las recurrentes presentaron un recurso de *certiorari* ante el Tribunal Supremo. Mediante este, señalaron que el foro apelativo había errado al no dejar sin efecto la "Determinación Administrativa 2021-01" de la Junta Revisora de Subastas de la ASG. El 14 de noviembre de 2025, el Tribunal Supremo emitió una *"Resolución"* mediante la cual declaró *No Ha Lugar* el recurso discrecional presentado por las recurrentes. Véase, Entrada Núm. 4 de SUMAC TA, anejos intitulados *"Petición de Certiorari CC-2025-0633"* y *"Resolución"* (TA 1254).

de $7.5 millones exigida por la precitada Sección. Además, concluyó que los documentos financieros presentados por las recurrentes no identifican el periodo cubierto por el estado financiero entregado ni tampoco remitieron estados financieros para los dos años mas recientes. Asimismo, expuso que las recurrentes no incluyeron el estado de flujo de efectivo, según requerido por la Sección 6.1.2 del RFP-2023-08.

En desacuerdo, oportunamente el 30 de marzo de 2026, las recurrentes presentaron de forma conjunta ante este Tribunal un recurso de revisión judicial. Mediante este, esbozaron los siguientes señalamientos de error:

> **PRIMERO**: Erró la Junta Revisora de Subastas de la ASG al emitir una resolución en los méritos sin haber adquirido jurisdicción, toda vez que vivienda incumplió con el mandato de este Honorable Tribunal de emitir el aviso de adjudicación conforme a derecho.

> **SEGUNDO**: Erró la Junta Revisora de Subastas de la ASG al confirmar la determinación de vivienda de descalificar a las recurrentes bajo el supuesto de que no cumplieron con suplir la capacidad financiera para sufragar los proyectos.

El 9 de abril de 2026, notificamos una *"Resolución"* en la que le concedimos al DVPR un término de quince (15) días para presentar su alegato en oposición.

En cumplimiento de ello, el 24 de abril de 2026, el DVPR presentó *"Alegato en Oposición a Recurso de Revisión Judicial."*

Con el beneficio de la comparecencia de ambas partes, procedemos a esbozar el marco jurídico aplicable al asunto ante nuestra consideración.

**II.**

**A.    Revisión Judicial de las Decisiones Administrativas:**

Las determinaciones de las agencias administrativas son revisables ante el foro judicial para garantizar que estas actúan dentro de marco de las facultades que les fueron delegadas por ley. *Voilí Voilá Corp. et al. v. Mun. Guaynabo,* 213 DPR 743, 753 (2024); *OEG v. Martínez Giraud*, 210 DPR 79, 88 (2022). De esta manera, los ciudadanos tienen un foro al cual recurrir para vindicar sus derechos y obtener un remedio en los casos en que las agencias actúen de forma arbitraria. *Voilí Voilá Corp. et al. v. Mun.*

*Guaynabo,* supra, pág. 753. La revisión judicial de una decisión administrativa se circunscribe a examinar lo siguiente: 1) si el remedio concedido por la agencia fue el apropiado; 2) si las determinaciones de hecho realizadas por la agencia estuvieron sustentadas por la prueba sustancial que surgió del expediente administrativo; y 3) si, mediante una revisión completa y absoluta, las conclusiones de derecho fueron correctas. *Otero Rivera v. USAA FED. SAVS. BANK,* 214 DPR 473, 484-485 (2024).

En el escenario particular de las cuestiones de derecho, el Tribunal Supremo ha proferido las siguientes expresiones:

> [A]l enfrentarse a un recurso de revisión judicial proveniente de una agencia administrativa, será el deber de los tribunales revisar las conclusiones de derecho en todos sus aspectos. No guiados por la deferencia automática a la que alude el DACo, sino que por los mecanismos interpretativos propios del Poder Judicial. *Vázquez y otro v. Consejo de Titulares y Junta de Directores del Condominio Los Corales y otros*, 2025 TSPR 56.

Cabe resaltar, que en el ejercicio de revisión judicial los tribunales no pueden descartar de forma absoluta la determinación de una agencia administrativa. *Voilí Voilá Corp. et al. v. Mun. Guaynabo,* supra, pág. 754. Antes de variar la referida decisión se debe examinar la totalidad del expediente y "determinar si la interpretación de la agencia representó un ejercicio razonable de su discreción administrativa, así fundamentado en la pericia particular de esta, en consideraciones de política pública o en la apreciación de la prueba." *Íd*. A su vez, las decisiones administrativas se deben evaluar bajo el marco de la deferencia, por razón de la experiencia y pericia de dichas agencias respecto a las facultades que se le han delegado. *Batista, Nobbe v. JTA. Directores*, 185 DPR 206, 215 (2012).

En consideración a la aludida deferencia, se ha establecido que "las decisiones de las agencias administrativas tienen una presunción de legalidad y corrección que los tribunales deben respetar mientras que la parte que las impugna no produce suficiente evidencia para derrotarlas." *Batista, Nobbe v. JTA. Directores*, supra, pág. 215. A la luz de ello, la parte que impugne una decisión administrativa tiene el peso de la prueba para demostrar que esta no se sustenta en el expediente administrativo o que

las conclusiones a las cuales llegó la agencia son irrazonables. *OEG v. Martínez Giraud*, supra, pág. 89.

**B.    La Contratación Gubernamental y el Requerimiento de Propuestas:**

En nuestro ordenamiento jurídico, las subastas gubernamentales están revestidas de un alto interés público, toda vez que aspiran a promover una sana administración. *RedMane Technology, LLC v. Departamento de Salud D2SOL, Inc., et als.,* 2026 TSPR 37; *CD Builders v. Mun. Las Piedras,* 196 DPR 336 (2016); *Maranello et al. v. OAT*, 186 DPR 780 (2012); *Caribbean Communications v. Pol. De P.R.*, 176 DPR 978, 994 (2009). El objetivo fundamental de un procedimiento de subasta es proteger el erario mediante la adquisición de servicios de calidad para el Gobierno al mejor precio posible. *Empresas Toledo v. Junta de Subastas*, 168 DPR 771 (2006); *A.E.E. v. Maxon Eng. Servs., Inc.*, 163 DPR 434 (2004); *RBR Const., S.E. v. A.C.,* 149 DPR 836 (1999).

De igual forma, propenden a que el Gobierno lleve a cabo sus funciones como comprador de una forma eficiente y honesta, al margen del favoritismo, dispendio, extravagancia y descuido en el otorgamiento de los contratos. *Sonnell Transit Service, LLC v. Junta de Subastas del Municipio Autónomo de Toa Baja y otro*, 2025 TSPR 85; *Aluma Const. v. AAA,* 182 DPR 776 (2011); *Torres Prods. v. Junta Mun. Aguadilla*, 169 DPR 886 (2007).

En lo atinente, el requerimiento de propuestas o RFP (por sus siglas en inglés) al igual que la subasta tradicional son vehículos procesales utilizados por el gobierno estatal y los municipios para adquirir bienes y servicios. *Puerto Rico Eco Park v. Municipio de Yauco (Junta de Subastas)*, 202 DPR 525, 531 (2019); *R&B Power v. E.L.A.*, 170 DPR 606, 621 (2007). Su objetivo es proteger los intereses del pueblo procurando los precios más económicos; evitar el favoritismo, la corrupción, el dispendio, la prevaricación, la extravagancia y el descuido al otorgarse los contratos, y minimizar los riesgos de incumplimiento. *Caribbean Communications v.*

*Pol. De P.R.*, supra, pág. 994. Para posibilitar estos objetivos se fomenta la libre competencia entre el mayor número posible de postores. *Íd.* En particular, se recurre al requerimiento de propuestas cuando se trata de la adquisición de bienes y servicios especializados o altamente técnicos y complejos, o cuando existen escasos competidores cualificados. *R&B Power v. E.L.A.*, *supra*, págs. 621-622.

El requerimiento de propuestas, a diferencia de la subasta, se destaca por ser un procedimiento informal y flexible que permite al oferente negociar con el gobierno central o municipal y enmendar o revisar las ofertas antes de la adjudicación de un contrato de adquisición de bienes y servicios. *R&B Power v. E.L.A.*, supra. Sin embargo, al igual que la subasta formal, el RFP debe expresar los parámetros que se utilizarán para la adjudicación del contrato. *CD Builders v. Mun. Las Piedras,* supra, pág. 346. Esto es los requerimientos, los términos y las condiciones, así como los factores que han de considerarse en la evaluación para la adjudicación de subasta. *Íd.* Es decir, el requerimiento debe enumerar "todos los requisitos y factores que se tomarán en cuenta en el momento de escoger a la agencia que ejecutará el acuerdo" y, además, los licitadores deberán ser responsivos a tales requisitos y factores. *Transp. Sonnell v. Jta. Subastas ACT,* 214 DPR 633, 650 (2024).

**C.      Manual de Adquisiciones para los Programas CDBG-DR, CDBG-MIT y CDBG Estatal ("Manual de Adquisiciones"), Núm. 9506 del 25 de septiembre de 2023:**

"[L]as agencias administrativas son las facultadas para adoptar, mediante reglamentación, los procedimientos y las guías que regirán las subastas y los requerimientos de propuestas que tengan a bien celebrar." *Transp. Sonnell v. Jta. Subastas ACT,* supra, pág. 650-651. A tales efectos, el DVPR adoptó el Manual de Adquisiciones Núm. 9506. "El propósito del Manual es instituir estándares y directrices para la adquisición de bienes, suministros, equipo, construcción, ingeniería, arquitectura, u otros servicios profesionales y no profesionales para los Programas de la Subvención en Bloque para Desarrollo Comunitario." Sección 1.4. Cada

transacción de adquisición debe ser realizada de manera "que proporcione plena y libre competencia." Sección 1.6. Entre los escenarios que limitan la libre competencia, según la referida Sección, se encuentran los siguientes:

1.    Establecer requisitos irrazonables a ofertantes para que puedan cualificar para hacer negocios;

2.    Requerir experiencia innecesaria y fianzas excesivas;

3.    Prácticas no competitivas de fijación de precios entre ofertantes o entre empresas afiliadas;

4.    Contratos no competitivos a consultores que están bajo contratos a largo plazo;

5.    Conflictos de intereses organizacionales;

6.    Especificar solo un producto "de marca" en lugar de permitir que se ofrezca un producto "igual" que incluya una descripción de las características esenciales del artículo para que la competencia no esté restringida; y

7.    Cualquier acción arbitraria en el proceso de adquisición.

La adquisición de bienes y servicios del DVPR se hará mediante una Junta de Subastas, la cual evaluará y adjudicará ofertas y propuestas en procesos de licitación formal e informal. Véase, Sección. 4.4. Este Manual de Adquisiciones define la "Solicitud de Propuestas" (RFP) como aquel "[m]odo de convocatoria usado bajo los métodos competitivos de adquisición." Sección 2.1 aaa. "La evaluación de propuestas y selección de Proponentes se basan en los criterios de evaluación y factores de adjudicación que se indiquen en el RFP." *Id.* La calidad o capacidad de estos proponentes depende, entre otros factores, de su disponibilidad de recursos financieros y técnicos. *Id,* UU.

En lo que respecta a la adjudicación de Propuestas, la Sección 5.1 establece lo siguiente:

El contrato se adjudicará a favor del proponente **que cumpla con los criterios de evaluación** y **cuyo historial probado de competencia y cumplimiento convenza a la Junta de Subastas** de su capacidad para satisfacer los términos del posible contrato. Aunque es uno de los factores determinantes, la adjudicación no debe hacerse únicamente a base de la oferta con el precio mas bajo. (Énfasis suplido).

A su vez, la Sección 10.6.1e dispone, que la adjudicación se realizará a favor de la firma o firmas responsables "cuyo enfoque técnico hacia el Proyecto, cualificaciones, precio y/o cualesquiera otros factores

considerados, son más beneficiosos para Vivienda, siempre que el costo o precio sea razonable bajo los métodos identificados en este Manual."

**D.      Mandato:**

Tal y como lo ha expresado nuestro Tribunal Supremo, el mandato es una figura enmarcada dentro de los procesos apelativos judiciales, la cual se ha definido como el medio que posee un tribunal en alzada de comunicarle a un tribunal inferior qué determinación ha tomado sobre la sentencia objeto de revisión y ordenarle actuar en conformidad con la misma. Véase, *Colón y otros v. Frito Lays*, 186 DPR 135, 151 (2012).

Mediante el mandato, un foro apelativo le comunica al foro apelado su decisión, le imparte instrucciones y le devuelve el expediente original del caso*.* R. Hernández Colón, Práctica Jurídica de Puerto Rico; Derecho Procesal Civil, 5ta ed., San Juan, Pub. Lexis Nexis, 2010, Sec. 5553, págs. 499. El mismo "representa el final de los procesos en revisión, la remoción del caso de la jurisdicción del tribunal apelativo y su devolución al foro de origen para la continuación de los procedimientos." *Vaillant v. Santander,* 147 DPR 338, 351 (1998).

En armonía con lo anterior, nuestro Tribunal Supremo ha expresado que el mandato cobra especial relevancia en lo concerniente a los efectos de índole jurisdiccional que pueda tener su remisión al foro de origen. *Colón y otros v. Frito Lays*, supra, pág. 153. Una vez el tribunal en alzada emite su determinación, y la misma adviene final y firme, se enviará el mandato correspondiente al foro recurrido. *Íd.* Es en ese momento que el recurso que estaba ante la consideración del foro revisor concluye para todos los fines legales, por lo que se entiende que no es hasta entonces que éste pierde jurisdicción en lo concerniente al asunto. *Íd.* Una vez recibido el mandato, lo resuelto por el tribunal apelativo constituye la *ley del caso* y el tribunal inferior debe limitarse a cumplir con lo ordenado. *Rosso Descartes v. BGF,* 187 DPR 184, 192 (2012).

Entiéndase por ello, que el mandato obliga al foro apelado y este no puede examinar nuevamente las cuestiones resueltas. *Félix v. Las*

*Haciendas*, 165 DPR 832, 843 (2005). La norma establecida por los tribunales apelativos solamente puede ser variada, a manera de excepción, si el caso llega nuevamente ante su consideración, y este entiende que cometió un error que es necesario corregir para evitar una grave injusticia. *Vicioso Tueros de Suárez v. Suárez Noya y otros*, 2026 TSPR 8; *Félix v. Las Haciendas*, supra, pág. 844.

**III.**

Las recurrentes comparecen ante este Tribunal al amparo de dos señalamientos de error. En primer lugar, aducen que la Junta Revisora de la ASG carece de jurisdicción para revisar y adjudicar el recurso de revisión administrativa presentado ante sí. En particular sostienen que, conforme a los mandatos emitidos por este Foro apelativo, lo que correspondía para este caso era que el DVPR emitiera una nueva notificación de adjudicación de solicitud de propuestas para que con ello se pudiera activar el proceso revisor ante la aludida Junta. Siendo así, arguyen que al no emitirse una nueva notificación la Junta Revisora de la ASG no podía adjudicar los méritos de la revisión presentada.

Por otro lado, peticionan que se declare la nulidad del proceso de solicitud de propuestas, toda vez que entienden que han variado las bases económicas bajo las cuales se compitió originalmente. En cuanto a la idoneidad de sus respectivas propuestas, aseveran que sometieron estados financieros que evidencian que tienen solidez económica. Sin embargo, alegan que el DVPR les exigió arbitrariamente el requisito irrazonable e impráctico de someter una propuesta con una línea de crédito no condicionada por el monto requerido.

Por su parte, el DVPR plantea que el mandato del Tribunal de Apelaciones en el caso KLRA202500290 consolidado con el caso KLRA202500291, no contempla que el DVPR tenía que nuevamente notificar el Aviso de Adjudicación, sino mas bien determinó que la Junta Revisora de la ASG debía atender en sus méritos los recursos presentados ante su consideración. Respecto al segundo señalamiento de error, aduce

que UGD no sometió una carta de intención financiera y que el resto de las recurrentes no demostraron contar con una línea de crédito que garantice mínimamente la cantidad de $7.5 millones. Añadió, que tampoco las recurrentes demostraron poseer dinero en efectivo suficiente el cual asegure la disponibilidad de la cuantía requerida. Por consiguiente, sostiene que las recurrentes no pueden cualificar para la obtención de la buena pro.

Tras un examen detenido de los argumentos de las partes y del expediente ante nos, determinamos confirmar la decisión recurrida. Nos explicamos.

Según el marco doctrinal expuesto, los foros apelativos tenemos la facultad de revisar los dictámenes emitidos por los foros de origen y el deber de notificar a los aludidos foros las decisiones que surjan a raíz de dicha revisión. Las determinaciones emitidas por los foros apelativos constituyen la ley del caso y tan pronto los foros de origen reciban el mandato de la decisión apelativa deberán actuar de conformidad con lo resuelto por el foro revisor. En el caso ante nuestra consideración, las recurrentes impugnan la autoridad de la Junta Revisora de la ASG para revisar la Adjudicación del RFP-2023-08 y resolver en sus méritos la revisión administrativa presentada. No les asiste la razón.

Según esbozado, este Tribunal en el caso KLRA202500290 consolidado con el caso KLRA202500291 revocó la decisión de la Junta Revisora de la ASG, mediante la cual dicha Junta se había declarado sin jurisdicción para revisar en sus méritos la adjudicación de la Junta de Subastas del DVPR en el RFP-2023-08. Al resolver los recursos consolidados esta Curia dispuso expresamente lo siguiente: "[S]e le ordena a la Junta Revisora de la ASG que atienda el recurso ante su consideración y resuelva el mismo." De manera que, la interpretación de las recurrentes de que el caso debía retornar al DVPR no es compatible con lo resuelto por este Tribunal. Siendo así, la referida Junta Revisora de la ASG actuó conforme a lo ordenado al resolver en sus méritos la revisión administrativa

presentada por las recurrentes. Por lo tanto, el primer señalamiento de error no fue cometido.

De otra parte, las recurrentes cuestionan la razonabilidad de los requisitos financieros impuestos por el DVPR. Sostienen, que ellas demostraron su solidez económica y que existió trato desigual en torno a la evaluación de la información financiera requerida. Tampoco les asiste la razón.

Surge del expediente ante nuestra consideración, que los proponentes debían cumplir con una serie de criterios para poder ser considerados para obtener la buena pro. Los criterios establecidos fueron enlistados en las siguientes categorías: "Submission Requirements;" "Qualification Requirements;" "Plan of Action / Work Approach;" "Cost Requirements;" y "Preference." A su vez, cada categoría se subdividió en una serie de elementos a los que se les asignó una puntuación en consideración al cumplimiento o no de cada proponente con el requisito exigido. Finalmente, cada proponente obtenía una evaluación de "Pass" o "Fail." Cabe señalar, que la categoría de "Submission Requirements" contenía "Financial Stability" entre los elementos a examinar.[5]

Además, de conformidad a la Sección 6.1.2 del RFP cada proponente debía demostrar que cuenta con los requisitos financieros suficientes para llevar a cabo los servicios requeridos por la Solicitud de Propuestas. Así pues, cada proponente debía proporcionar la siguiente información financiera: "Year – end Financial Statements Analysis;" "Interim Financial Statements Analysis;" **"Line of Credit and / or Bank Accounts;"** "Legal Actions;" y "No Bankruptcy." La Junta de Subastas del DVPR le asignó un porciento de cumplimiento a cada uno de estos requisitos financieros. Para obtener una puntuación de "Pass" los proponentes debían cumplir en un setenta por ciento (70%) o más los requisitos financieros exigidos.[6]

---

[5] Véase, Entrada Núm. 8 de SUMAC del TA, Anejo 20, páginas. 9 y 10.

[6] Véase, Entrada Núm. 8 de SUMAC del TA, Anejo1, pág. 4.

De la documentación presentada ante este Tribunal, surge que las recurrentes obtuvieron una puntuación de "Fail" en el requisito de "Financial Stability" debido a que no cumplieron plenamente con la Sección 6.1.2 del RFP.[7] Es preciso señalar, que nuestro Ordenamiento Jurídico vigente exige que los requerimientos de propuestas o RFP expresen los parámetros y factores que se tomaran en consideración para seleccionar el o los proponentes que serán contratados. Particularmente, el Manual de Adquisiciones Núm. 9506 reafirma que la evaluación de las propuestas presentadas se llevará a cabo en consonancia con los factores de adjudicación indicados en el RFP. Asimismo, la Sección 5.1 del referido Manual establece de manera expresa que "[e]l contrato se adjudicará a favor del proponente que cumpla con los criterios de evaluación." En el caso ante nos, la Junta de Subasta del DVPR cumplió con las anteriores exigencias toda vez que estableció una serie de requisitos a tenor de unas guías porcentuales.

Del expediente surge que las recurrentes no cualificaron para obtener la buena pro, puesto que no cumplieron a cabalidad con los requisitos financieros exigidos. Las recurrentes arguyen que lograron demostrar su solvencia económica mas no aseveran que cumplieron plenamente con los criterios financieros requeridos por la Junta de Subasta del DVPR. Únicamente, se limitan a cuestionar lo impráctico e irrazonable de cumplir con la línea de crédito exigida. De igual manera, las recurrentes se ciñen a argumentar sobre la arbitrariedad del proceso celebrado. Ambos planteamientos por sí solos no derrotan la presunción legalidad que les asiste a las determinaciones administrativas, toda vez que no fueron acompañados de prueba suficiente que nos lleve a revertir la decisión recurrida.

Cabe mencionar que, "las agencias administrativas, de ordinario, se encuentran en mejor posición que los tribunales para evaluar las

---

[7] Véase, Entrada Núm. 8 de SUMAC del TA, Anejo 20, páginas 30-32; 34-36; 48-49; 55-56; 135-136; 138-140.

propuestas o licitaciones ante su consideración." *St. James Sec. v. AEE*, 213 DPR 366, 378 (2023). La razón de ello estriba en que a las agencias "se les reconoce discreción al momento de considerar las licitaciones, rechazar propuestas y adjudicar la subasta a favor de la licitación que estime se ajusta mejor a las necesidades particulares de la agencia y al interés público en general". *Id.* Ante ello, como norma general, los tribunales no debemos intervenir con la adjudicación de una subasta o el rechazo de una propuesta, a menos que quede demostrado que la adjudicación realizada por la agencia constituye abuso de discreción, es arbitraria o irrazonable. Al examinar el expediente ante nuestra consideración no surge que el presente proceso de solicitud de propuestas haya estado viciado por alguna de las anteriores consideraciones. En vista de lo anterior, confirmamos la decisión recurrida.

**IV.**

Por los fundamentos antes expuestos, *confirmamos* la *"Resolución"* objeto de revisión.

**Notifíquese.**

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones
